[No. F048648. Fifth Dist. July 28, 2006.]

In re JEFFREY M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY M., Defendant and Respondent;
MARIA M., Objector and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III. and IV.

COUNSEL

Sandra T. Uribe, under appointment by the Court of Appeal, for Objector and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Catherine Chatman and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

WISEMAN, J.—

### *PROCEDURAL AND FACTUAL HISTORIES*

This appeal raises an issue of first impression regarding the interpretation of Welfare and Institutions Code[1] section 730.7, which imposes joint and several parental liability for restitution orders made by the juvenile court in delinquency proceedings.

In a delinquency proceeding involving appellant Maria M.'s son Jeffrey, the juvenile court ordered Maria jointly and severally liable for restitution to the victim of Jeffrey's offense in the amount of $5,351.99. Jeffrey, who was age 17 years at the time of the offense, but 18 at the time of the disposition order, entered a plea of no contest to battery on a peace officer. The offense occurred when an officer supervising a school dance placed a hand on Jeffrey's shoulder, asking him to go with the deputy to the front office to call Maria, because it was time for Jeffrey to leave the dance. (Jeffrey was on probation for an earlier offense and had a 10:00 p.m. curfew.) Jeffrey pulled away, causing the officer to lose his balance and fall, injuring his ring finger.

At the hearing set to determine restitution, the juvenile court informed Maria that it needed to decide the legal issue of "whether or not Jeffrey would be responsible for [the restitution ordered]." Maria was told she would be notified of the court's decision by mail. Maria was not represented by counsel, although she had been provided notice according to section 729.5 that she could be held liable for any restitution ordered. Maria was held

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

jointly and severally liable pursuant to section 730.7 for the restitution ordered. Maria appeals from this order only.

## *DISCUSSION*

### I. *Appealability*

The order of the juvenile court making Maria jointly and severally liable for restitution to the victim is an appealable order. Although section 800 does not expressly afford a minor's parent the right to appeal a judgment or order of the juvenile court made in a section 601 or 602 proceeding, a parent has the authority to appeal to protect his or her own interests. (*Dana J. v. Superior Court* (1971) 4 Cal.3d 836, 841 [94 Cal.Rptr. 619, 484 P.2d 595]; *In re Dargo* (1947) 81 Cal.App.2d 205, 207 [183 P.2d 282].) Also, section 730.7 expressly authorizes the juvenile court to make the mother jointly and severally liable for the restitution ordered pursuant to Civil Code section 1714.1. Judgments obtained pursuant to Civil Code section 1714.1 are reviewable on appeal. (Code Civ. Proc., § 904.1, subd. (a)(1).)

### II. *Propriety of the restitution order*

Section 730.7 provides as follows: "(a) In a case in which *a minor is ordered to make restitution to the victim or victims,* or the minor is ordered to pay fines and penalty assessments under any provision of this code, *a parent or guardian who has joint or sole legal and physical custody and control of the minor shall be rebuttably presumed to be jointly and severally liable with the minor in accordance with Sections 1714.1 and 1714.3 of the Civil Code for the amount of restitution, fines, and penalty assessments so ordered,* up to the limits provided in those sections, subject to the court's consideration of the parent's or guardian's inability to pay. When considering the parent's or guardian's inability to pay, the court may consider future earning capacity, present income, the number of persons dependent on that income, and the necessary obligations of the family, including, but not limited to, rent or mortgage payments, food, children's school tuition, children's clothing, medical bills, and health insurance. *The parent or guardian shall have the burden of showing an inability to pay.* The parent or guardian shall also have the burden of showing by a preponderance of the evidence that the parent or guardian was either not given notice of potential liability for payment of restitution, fines, and penalty assessments prior to the petition being sustained by an admission or adjudication, or that he or she was not present during the proceedings wherein the petition was sustained either by admission or adjudication and any hearing thereafter related to restitution, fines, or penalty assessments." (§ 730.7, subd. (a), italics added.)

Maria argues that section 730.7 allows parental liability only when the restitution order is imposed upon a person who is a "minor," and that the operable date is the date of the restitution order. She argues that the purpose behind section 730.7 is not to impose liability on parents per se, because this is contrary to the general rule found in the common law that parents are not liable for damages arising out of the torts of their children. (*Perry v. Simeone* (1925) 197 Cal. 132, 136 [239 P. 1056]; *Van Den Eikhof v. Hocker* (1978) 87 Cal.App.3d 900, 904 [151 Cal.Rptr. 456].) She contends that the statute simply recognizes the support obligation arising out of the parent/child relationship and that, once Jeffrey turns 18, the premise for the vicarious liability provided in section 730.7 disappears. Before age 18, Jeffrey is not an emancipated person. Once 18, however, he is, and the victim may recoup his losses directly from Jeffrey's future earnings, consistent with the Legislature's intent that restitution be imposed directly on Jeffrey. He is no longer a minor and the statute does not authorize vicarious liability. (See § 730.6, subd. (a)(1) [victim shall receive direct restitution from minor].) Using this analysis, Maria contends that she cannot be held liable for the restitution order because Jeffrey was 18 on the date the order was imposed.

We have found no cases addressing the term "minor" as used in section 730.7. The term is not defined in the Welfare and Institutions Code per se. The Family Code defines "minor" as traditionally understood, anyone under the age of 18. (Fam. Code, § 6500.) We accept this definition as far as it goes. The issue in this case becomes, however, at what time must the person in question be a "minor" for purposes of section 730.7—at the time of the offense, the date of the dispositional hearing, the date of the restitution order, or some other time?

■ Section 602 sets the time for determining whether a person falls within the jurisdiction of the juvenile delinquency law as one who is under the age of 18 *at the time he or she violates the law of the state.* The statutory scheme uses various words throughout to describe persons subject to delinquency jurisdiction and the orders of the juvenile court. "Ward," "dependent child," "person," and "minor" are all used, alone and in combination. (See §§ 634, 903, 871, 880, 903.1.) Section 730.7 uses only the word "minor."
■ To determine the meaning of a word or term used in a statutory scheme, we must look at the context of the statutory scheme. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658–659 [25 Cal.Rptr.2d 109, 863 P.2d 179] [meaning of a statute may not be determined from a single word or sentence but must be construed in context; provisions relating to same subject matter must be harmonized if possible]; see also *Webster v. Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596] [when interpreting statute each sentence must be read in light of the statutory scheme].)

Maria relies on *In re Jesse V.* (1989) 214 Cal.App.3d 1619 [263 Cal.Rptr. 369] to support her contention that the Legislature intended the vicarious liability provisions of section 730.7 to apply only where the restitution order is made at a time where the delinquent was still a minor and has not reached the age of majority. In *Jesse V.*, the issue was whether a county could seek reimbursement pursuant to section 903 from the parents of a section 602 ward for the reasonable costs expended for the support and maintenance of a ward placed outside the family home after the ward turns 18. Section 903 provides that a parent or guardian liable for the support of the "minor" who is placed outside the home is liable to the county for the cost of the minor's placement up to the statutory limits. (§ 903.) The county argued, as does the respondent here, that the term "minor" should be interpreted throughout the Welfare and Institutions Code to mean all wards of the juvenile court, i.e., any person who is a minor at the time of the offense. In a brief discussion, we rejected this argument by looking at section 902, another related provision dealing with the cost of support for a ward placed outside the home. In section 902, the Legislature used multiple terms to describe persons subject to its provisions, "ward, dependent child, or other minor person." We concluded that the Legislature must not have intended the term "minor" to apply to all wards of the juvenile court in section 903, because it limited its reference to "a minor." Rather, we reasoned that by not including "a ward or dependent child" in section 903, the legislative implication is that the term "minor," as used in section 903, was intended "in the traditional sense, i.e., a person under 18 years of age." (*In re Jesse V., supra,* 214 Cal.App.3d at pp. 1622–1623.) We agree with this analysis as far as it goes, but do not believe the same result is compelled here.

First, the discussion in *Jesse V.* was limited to two related provisions of the statutory scheme, sections 902 and 903. These two sections deal with the exact same subject matter. There was no attempt in *Jesse V.* to apply the same rationale to the entire statutory scheme. (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 372 [20 Cal.Rptr.2d 330, 853 P.2d 496] [cases are not authority for propositions they do not consider].) Second, the analysis did not stop with a comparison of the words used, but extended to the underlying rationale behind the right of the county to seek reimbursement from parents for the maintenance and support of their children while in custody. As we stated, "[t]he statute refers to the costs of support of the minor while the minor is 'placed, or detained in, or committed to, any institution or other place' indicating the ward must be a minor while placed outside the family home. Further, as noted above, the validity of section 903 is dependent on the existence of a support obligation. In general, once the child turns 18, this support obligation ends." (*In re Jesse V., supra,* 214 Cal.App.3d at p. 1623.)

In contrast, there are other provisions of the Welfare and Institutions Code where it would be ludicrous to conclude that the use of the word "minor"

alone is justification for reading the word in its traditional sense only. For example, sections 633 and 634 address the right to counsel during delinquency proceedings, and both use only the word "minor." (§ 633 ["minor" must be informed at detention hearing that he or she has a right to counsel]; § 634 [provides for appointment of counsel where a "minor" desires counsel but is unable to afford one].) With regard to these two sections, there is no question that we would have to interpret the word "minor" to mean any person who is subject to delinquency jurisdiction, i.e., any person who was under the age of 18 at the time of the offense. The right to counsel does not dissolve if the minor turns 18 before delinquency jurisdiction ends. (*In re Gault* (1967) 387 U.S. 1, 41 [18 L.Ed.2d 527, 87 S.Ct. 1428] [14th Amend. grants right to appointed counsel in any delinquency proceedings likely to result in commitment, even though proceedings are civil, not criminal].) A person subject to the jurisdiction of the juvenile court in delinquency proceedings is entitled to representation of counsel at every stage of the proceedings. (§ 633.)

Likewise, section 701 provides that at the jurisdictional hearing the court must consider whether the "minor" is a person described by section 300, 601, or 602. Yet, it is entirely probable that a person who is 17 when the offense is committed could be 18 by the date of the jurisdictional hearing. If we accept Maria's restricted definition of the term "minor" when reading section 701, a person falling within the definition of section 602 would escape a jurisdictional finding by turning 18 before the jurisdictional hearing. The same problem arises when interpreting the meaning of the word "minor" in section 639, which authorizes the juvenile court to order reappearance of the "minor," or section 664, which authorizes the attorney of record for the "minor" to issue subpoenas requiring attendance of witnesses in delinquency proceedings. The obvious reference in these sections is any person subject to the jurisdiction of the juvenile court as defined by section 602, "minor" or not. As a result, we are compelled to limit *Jesse V.*'s discussion regarding the choice of terms used by the Legislature to the facts of that case and do not extend it to those presented here.

The immediate context of section 730.7 supports construing the term "minor" to mean any person who at the time of the offense was under the age of 18; in other words, any ward of the court. Section 729.5,[2] the statute

---

[2] Section 729.5 governs the notice requirements of section 730.7 and provides that the parents be issued a citation ordering them to appear in court at the time and date set for a hearing at which a restitution fine will be imposed on the minor pursuant to section 730.6. (§ 729.5, subd. (a).) The citation must notify the parents that, at the hearing, they may be held liable for the payment of restitution ordered and must contain a warning that the failure to appear at the time and date stated may result in an order that the parents pay restitution up to the limits set by Civil Code section 1714.1. (§ 729.5, subd. (b).)

requiring notice to the parents that they may be held liable for any restitution order imposed under section 730.7, provides:

"(a) If a petition alleges that a minor is a person described by Section 602 and the petition is sustained, the court, in addition to the notice required by any other provision of law, may issue a citation to the minor's parents or guardians, ordering them to appear in the court at the time and date stated for a hearing to impose a restitution fine pursuant to Section 730.6.

"(b) The citation shall notify the parent or guardian that, at the hearing, the parent or guardian may be held liable for the payment of restitution if the minor is ordered to make restitution to the victim. . . ."

The notice mandated by this section refers specifically to section 602 and requires notice of liability to parents of a "minor" as defined by section 602. This is consistent with our reading of the statute. Liability is tied directly to jurisdiction of the juvenile court as defined by section 602, i.e., a person under 18 years of age at the time of the offense.

Section 730.6, the statute imposing direct liability for restitution on the minor, without which there can be no vicarious liability, states that it is the intent of the Legislature that a victim recover directly from a "minor" who "is found to be a person described in section 602 . . . ." (§ 730.6, subd. (a)(1).) Subdivision (a)(2) of section 730.6 again puts the operative date at the date of the offense by direct reference to section 602. The remaining portions of the statute use only the term "minor," and not the term "ward" or "dependent child." (§ 730.6, subds. (d)(1) & (2), (e), (g) & (p).) Under this section, the operative date for purposes of the restitution order is the date of the offense. As a result, an examination of section 730.7 in the context of its related provisions within the statutory scheme, sections 729.5 and 730.6, supports a broader interpretation of the term "minor" than the one proffered by Maria. (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310 [99 Cal.Rptr.2d 792, 6 P.3d 713] [we are to examine the statutes in their context and with other legislation on the same subject].)

The legislative intent of section 730.7 is to impose joint and several liability on the parents for the economic damages arising out of the criminal acts of their children while they are minors, even when the delinquent child reaches majority before the restitution order can be imposed. Section 730.7 is intended to transfer the vicarious liability policy endorsed by Civil Code section 1714.1 to juvenile court proceedings, in part, so that victims of a crime committed by a minor may seek restitution from the parents without the need for a separate independent civil action. (See Assem. Com. on Public Safety, analysis of Assem. Bill No. 1629 (1993–1994 Reg. Sess.) Jan. 11,

1994 [by adding rebuttable presumption language to § 731.1,[3] bill " 'simplifies procedures for victims to receive restitution from parents of delinquent minors' "]; Public Safety Subcom. on Juvenile Justice, analysis of Assem. Bill No. 3050 (1995–1996 Reg. Sess.) Apr. 23, 1996 [referring to Assem. Bill No. 3050 which reenacts § 731.1; arguments in support include, "By awarding restitution as part of the juvenile court case, this bill could obviate the need for a separate civil proceeding"].)

■ Civil Code section 1714.1 provides that "[a]ny act of willful misconduct of a minor which results in injury or death to another person or in any injury to the property of another *shall be imputed to the parent or guardian* having custody and control of the minor for all purposes of civil damages, and the parent or guardian having custody and control shall be jointly and severally liable with the minor for any damages resulting from the willful misconduct." (Civ. Code, § 1714.1, added by Stats. 1955, ch. 820, § 1, p. 1438, italics added.) Liability is limited under the statute to $25,000. (Civ. Code, § 1714.1, subd. (b).) The statute reflects an intentional departure from the common law rule that parents are not ordinarily liable for the torts of their minor child. Instead, it adopts a policy that, as between innocent third parties and the parents of a minor child causing damage through willful misconduct, the parents should bear the burden of *responsibility* of the loss in order to ensure recovery of any losses incurred. (*Robertson v. Wentz* (1986) 187 Cal.App.3d 1281, 1288–1289 [232 Cal.Rptr. 634]; see also *Cynthia M. v. Rodney E.* (1991) 228 Cal.App.3d 1040, 1046 [279 Cal.Rptr. 94].) Civil Code section 1714.1 imputes *liability for the tort committed,* and not merely for the resulting judgment. Civil Code section 1714.1 is expressly referenced in section 730.7.

Although we have found no case addressing the issue, upon a review of the case law arising under Civil Code section 1714.1, we cannot locate any attempt by the courts to distinguish between the date of the tortious acts and the date liability is reduced to dollars and cents. For example, in *Robertson v. Wentz, supra,* 187 Cal.App.3d 1281, the plaintiffs' son murdered the victim five days before turning 18. Liability was still imposed on the parents several years down the road after trial. In *Jamshid-Negad v. Kessler* (1993) 15 Cal.App.4th 1704 [19 Cal.Rptr.2d 621], a 17-year-old college freshman broke into a home in April 1992 and, in May 1993, the appellate court held that an action brought pursuant to Civil Code section 1714.1 could proceed against out-of-state parents. Obviously the 17 year old was no longer 17 at the time the court ruled. In *Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559 [54 Cal.Rptr.2d 468], the court found the parents vicariously liable for intentional

---

[3] Former section 731.1 applied only to minors committed to California Youth Authority, but mirrored the language of section 730.7. Section 731.1 was repealed in 1995 when section 730.7 was added. (Stats. 1995, ch. 313, § 21, p. 1775, § 23, p. 1779.)

torts committed by teenage sons some five years earlier. Given the time frame, it is most likely that one or more of the sons had reached the age of majority by the time the decision was issued. In each of these cases, vicarious liability was determined as of the date of the acts committed without regard to the age of the child at the time liability was reduced to a legal claim for damages. We see no reason why we should not take the same approach when evaluating liability under section 730.7.

█ Numerous statements in the legislative history of section 730.7, and related sections 729.5 and 730.6, make it clear that the Legislature intended to extend the policy considerations behind Civil Code section 1714.1 to juvenile delinquency cases. (See Sen. Rules Com., 3d reading analysis of Assem. Bill No. 989[4] (1995–1996 Reg. Sess.) July 5, 1995, p. 2 [referring to Assem. Bill No. 989, amending § 731.1, bill would provide for parental liability for a delinquent minor's restitution obligations]; Legis. Analyst, analysis of Assem. Bill No. 3050 (1995–1996 Reg. Sess.) p. 3 [Assem. Bill No. 989 established new procedure to allow victims of juvenile crime to obtain restitution from parents of the offender].) Unquestionably, the legislative intent was to abrogate the common law rule.[5] A statute's legislative history and the wider historical circumstances of its enactment may be considered in ascertaining legislative intent and are proper matters for our consideration. (*People v. Pena* (1999) 74 Cal.App.4th 1078, 1082 [88 Cal.Rptr.2d 656].)

█ Finally, we also observe that section 730.7, subdivision (a), assigns to parents the burden of showing that they were not present during the jurisdictional and any related hearings at which an admission was received or adjudication occurred. If a parent was not present at the date of adjudication, he or she is relieved of responsibility under section 730.7. This language implies a legislative intent that section 730.7 relates to liability for the offense, not simply liability for the subsequently imposed restitution. We believe this requires a conclusion that the *date of the offense* is the operative date for section 730.7 purposes. Jeffrey was a minor on the date of the offense and Maria can be held vicariously liable for the restitution ordered.

---

[4] Assembly Bill No. 989 led to section 730.7, which was then inadvertently chaptered out by Assembly Bill No. 817 (Stats. 1995, ch. 313, § 1, p. 1751). Assembly Bill No. 3050 reenacted provisions of Assembly Bill No. 989 accidentally chaptered out by Assembly Bill No. 817.

[5] Civil Code section 1714.1 is not the only statutory provision in California that rejects the common law rule. (See Veh. Code, § 17708 [provides for joint and several liability of parents when civil liability of minor arises out of operation of motor vehicle on public highway].) Numerous other jurisdictions have adopted statutes abrogating the common law rule and imposing vicarious liability on parents arising solely out of the parent/child relationship. (See Annot., Validity and Construction of Statutes Making Parents Liable (1966) 8 A.L.R.3d 612.) We do, however, acknowledge that, because a parental responsibility statute such as Civil Code section 1714.1 is in derogation of the common law rule, it must be strictly construed. (*Cynthia M. v. Rodney E., supra,* 228 Cal.App.3d at p. 1046.)

III., IV.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## *DISPOSITION*

The judgment is affirmed.

Vartabedian, Acting P. J., and Hill, J., concurred.

The petition of respondent Jeffrey M. for review by the Supreme Court was denied November 15, 2006, S146351.

---

[*]See footnote, *ante,* page 1017.