Filed 9/8/21  P. v. Marsh CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C088553 |
| v. | (Super. Ct. No. CRF132418) |
| DANIEL WILLIAM MARSH, | |
| Defendant and Appellant. | |

When he was 15 years old, defendant Daniel William Marsh murdered two victims and mutilated the bodies.  (*People v. Marsh* (2018) 20 Cal.App.5th 694, 696-697 (*Marsh I*).)  Tried in adult criminal court, a jury convicted him on two counts of first degree special circumstance murder and the trial court sentenced him to 52 years to life in prison.

In defendant's first appeal, this court conditionally reversed the judgment and directed the juvenile court to conduct a transfer hearing to determine if defendant should be transferred to adult criminal court or retained in juvenile court pursuant to Proposition 57, the Public Safety and Rehabilitation Act of 2016, which had become effective while

1

defendant's appeal was pending. (*Marsh I, supra*, 20 Cal.App.5th 694.) On remand, the juvenile court granted the People's motion to transfer defendant to adult criminal court and reinstated the judgment.

After the judgment was reinstated, Senate Bill No. 1391 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1012, § 1 (Senate Bill 1391)) became effective on January 1, 2019. With exceptions not applicable here, it eliminates the authority of a prosecutor to seek transfer to adult criminal court of a minor who was 14 or 15 years old at the time of an offense. (Welf. & Inst. Code, § 707, subd. (a); Stats. 2018, ch. 1012, § 1.)

Defendant now purports to appeal from the reinstated judgment, asserting that Senate Bill 1391 applies to him because his case is not yet final. But we conclude defendant's judgment was final before Senate Bill 1391 went into effect. Accordingly, we will dismiss this appeal.

BACKGROUND

In 2013, defendant was one month shy of his 16th birthday when he "stalked a Davis neighborhood at night and randomly selected the home of the two victims to satisfy a long-standing (and oft-expressed) desire to kill, after which he mutilated their bodies." (*Marsh I, supra*, 20 Cal.App.5th at pp. 696-697.)

An information filed directly in adult criminal court charged defendant with two counts of murder (Pen. Code, § 187, subd. (a))[1] and alleged various enhancements and special circumstances. (*Marsh I, supra*, 20 Cal.App.5th at p. 696.) A jury found defendant guilty of two counts of first degree murder committed while personally using a deadly weapon, and sustained three special circumstance allegations: that defendant committed multiple murder (§ 190.2, subd. (a)(3)), by means of torture (§ 190.2, subd. (a)(18)), while lying in wait (§ 190.2, subd. (a)(15)). The trial court sentenced

---

[1] Undesignated statutory references are to the Penal Code.

defendant to 52 years to life in prison, consisting of 25 years to life for each murder plus an additional year for each weapon enhancement.

Defendant appealed his convictions and in 2018 this court rejected his argument regarding the applicable insanity standard but conditionally reversed and remanded the matter with directions to hold a transfer hearing in light of newly enacted Proposition 57. The new law eliminated a prosecutor's ability to file charges directly in adult court, instead requiring the prosecutor to commence an action in juvenile court and then seek to transfer the matter to adult criminal court if appropriate. (See *Marsh I, supra*, 20 Cal.App.5th 694; see also *People v. Superior Court (Alexander C.)* (2019) 34 Cal.App.5th 994, 997 (*Alexander C.*); *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303 (*Lara*) [Proposition 57 applies retroactively to cases not yet final on appeal]; Welf. & Inst. Code, § 707, subd. (a)(1).)[2] The California Supreme Court denied review (case No. S247864) and a remittitur issued on May 30, 2018.

The Yolo County District Attorney then filed a petition under Welfare and Institutions Code section 602 and a motion to transfer the case to adult criminal court. The juvenile court granted the transfer motion and reinstated the judgment on October 24, 2018.

Defendant filed a writ petition in this court (case No. C088306) challenging the juvenile court's orders denying his motion to continue the transfer hearing until after Senate Bill 1391 went into effect and transferring him to adult criminal court. This court summarily denied the writ petition and the California Supreme Court denied review on February 13, 2019. (Supreme Court case No. S253054.)

---

[2] We treated defendant's request for judicial notice of the appellate record in his first appeal, case No. C078999, as a request to incorporate the records of those proceedings in the present appeal, and granted the motion.

3

DISCUSSION

Defendant argues Senate Bill 1391 applies to him under *In re Estrada* (1965) 63 Cal.2d 740, 742-746 (*Estrada*) because his case is not yet final. We review this question of law de novo. (See *People v. Arroyo* (2016) 62 Cal.4th 589, 593.)[3]

A

The decision whether to try a minor in juvenile court or adult criminal court can have significant consequences. (*Lara, supra*, 4 Cal.5th at p. 306.) While persons convicted of serious crimes in adult court can be punished with long prison sentences, juveniles tried in juvenile court generally receive more lenient treatment, with shorter periods of confinement and a focus on rehabilitation. (*Id*. at pp. 303, 306; see *K.C. v. Superior Court* (2018) 24 Cal.App.5th 1001, 1011.)

Historically, only those minors at least 16 years of age at the time of the offense could be tried in adult criminal court, and then only after a judicial determination that the minor was unfit to be dealt with under juvenile court law. (*K.L., supra*, 36 Cal.App.5th at p. 536-537.) The minimum transfer age remained at 16 for over three decades, until 1994, when the Legislature lowered it to 14 for certain enumerated serious or violent felonies. (*B.M. v. Superior Court* (2019) 40 Cal.App.5th 742, 750-751, review granted Jan. 2, 2020, S259030.) Under the 1994 legislation, a minor as young as 14 years of age

---

[3] The Yolo County District Attorney filed an amicus brief agreeing with the People but also urging us to conclude that Senate Bill 1391 is unconstitutional because it does not further the intent and purpose of Proposition 57. Amicus asks us to reconsider this court's prior decision in *People v. Superior Court (K.L.)* (2019) 36 Cal.App.5th 529, 532 (*K.L.*), which rejected a similar constitutional challenge to Senate Bill 1391. The Supreme Court is set to decide the issue, having granted review in *O.G. v. Superior Court* (2019) 40 Cal.App.5th 626, review granted November 26, 2019, S259011. Until we receive further guidance from the Supreme Court, we decline amicus's invitation to depart from this court's decision in *K.L.*

could be prosecuted in adult criminal court after a judicial determination of unfitness for juvenile adjudication. (*K.L.,* at p. 537.)

In 2000, California voters passed Proposition 21, the Gang Violence and Juvenile Crime Prevention Act, which broadened the circumstances in which minors 14 years of age and older could be prosecuted in adult criminal court. (*K.L., supra*, 36 Cal.App.5th at p. 537; *B.M. v. Superior Court, supra*, 40 Cal.App.5th at p. 751, review granted.) Proposition 21 permitted, and in some cases required, prosecutors to charge minors aged 14 or 15 directly in adult criminal court without a judicial determination of unfitness. (*Alexander C., supra*, 34 Cal.App.5th at p. 997; see *Lara, supra*, 4 Cal.5th at p. 305.)

In 2016, voters eliminated some of the changes made by Proposition 21 through the enactment of Proposition 57. (*Alexander C., supra*, 34 Cal.App.5th at p. 997.) With respect to juveniles, Proposition 57 " 'largely returned California to the historical rule' " by eliminating prosecutors' ability to file charges against juveniles directly in criminal court and limiting the circumstances under which a minor could be transferred to criminal court by a judge. (*Id*. at p. 998.) Minors aged 14 or 15 could still be tried in criminal court for specified serious or violent offenses, but only after a juvenile court judge conducted a transfer hearing and decided the minor was unfit for juvenile court. (*Lara, supra*, 4 Cal.5th at pp. 305, 308.)

Proposition 57 permits amendments without voter approval so long as the changes are consistent with, and further, the intent of the act. (*K.L., supra*, 36 Cal.App.5th at p. 535.) In 2018, the Legislature enacted Senate Bill 1391 (Stats. 2018, ch. 1012, § 1), which amended Proposition 57 by eliminating the authority of prosecutors to seek transfer to criminal court of a minor who was 14 or 15 years old at the time of the offense, "save for a narrow exception if the minor is 'not apprehended prior to the end of juvenile court jurisdiction.' (Welf. & Inst. Code, § 707, subd. (a)(2).)" (*Alexander C., supra*, 34 Cal.App.5th at p. 998.)

B

We agree with the parties that Senate Bill 1391 applies retroactively to nonfinal judgments under *Estrada*. (*People v. Superior Court (I.R.)* (2019) 38 Cal.App.5th 383, 386, review granted Nov. 26, 2019, S257773; *C.S. v. Superior Court* (2018) 29 Cal.App.5th 1009, 1038; see *Lara, supra*, 4 Cal.5th at pp. 303-304.) The question in dispute is whether defendant's judgment was final prior to the effective date of Senate Bill 1391.

Defendant argues that because the present appeal is still pending, his case is not yet final. At the very least, he argues the judgment was not final until February 13, 2019, when the Supreme Court issued its most recent denial of review following remand. Under either scenario, he claims Senate Bill 1391 requires reversal of the criminal judgment and remand to the juvenile court for disposition.

The People counter that defendant's judgment was already final when Senate Bill 1391 took effect. They claim the judgment became final 90 days after the Supreme Court denied review in *Marsh I*, and the juvenile court's reinstatement of the judgment after remand did not change the finality of the judgment.

A judgment is not final for purposes of the *Estrada* rule so long as the courts may provide a remedy on direct review, including the time within which to petition to the United States Supreme Court for writ of certiorari. (*People v. Barboza* (2018) 21 Cal.App.5th 1315, 1319.) Whether we can still provide defendant with a remedy on direct review requires an examination of the disposition in *Marsh I*. In that appeal this court conditionally reversed and remanded to allow the juvenile court to conduct a transfer hearing under Proposition 57. Our disposition was as follows: "The judgment of the criminal court is conditionally reversed and the matter remanded to the juvenile court with directions to hold a juvenile transfer hearing to determine defendant's suitability for treatment in juvenile or criminal court within 90 days of the issuance of our remittitur. If the juvenile court determines that defendant is the proper subject of criminal proceedings,

6

it shall reinstate the criminal judgment. If the juvenile court finds that it would not have transferred defendant to a court of criminal jurisdiction, then it shall deem defendant's convictions to be juvenile adjudications and conduct a dispositional hearing within its usual time frame."

"[T]he terms of the remittitur define the trial court's jurisdiction to act. 'The order of the appellate court as stated in the remittitur, "is decisive of the character of the judgment to which the appellant is entitled." ' " (*Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 774, fn. 5.) Here, the legal effect of the disposition, as defendant concedes, was a conditional affirmance of the judgment should the juvenile court find transfer appropriate. After holding the transfer hearing upon remand, the juvenile court found that transferring defendant to adult criminal court was proper, and, as directed by our disposition, it reinstated the judgment. (§ 1265, subd. (a) ["After the certificate of the judgment has been remitted to the court below, . . . all orders necessary to carry the judgment into effect shall be made by the court to which the certificate is remitted"]; *People v. Dutra* (2006) 145 Cal.App.4th 1359, 1366 [upon issuance of remittitur, "the trial court is revested with jurisdiction of the case, but only to carry out the judgment as ordered by the appellate court," italics omitted].)

On remand, the juvenile court did not resentence defendant. Instead, defendant was returned to the custody of the Department of Corrections and Rehabilitation to serve the remainder of his originally imposed sentence. Under those circumstances, the act of reinstating the judgment in accordance with this court's order did not constitute a new judgment from which to appeal.

To the extent the People suggest that defendant could appeal from the transfer hearing or that the legality of the transfer order is before this court on direct appeal, we

disagree. California Rules of Court, rule 5.770(g)[4] provides in relevant part that "[a]n order granting or denying a motion to transfer jurisdiction of a child to the criminal court is not an appealable order. Appellate review of the order is by petition for extraordinary writ." Defendant filed a writ petition challenging the juvenile court's transfer order, this court summarily denied the petition, and the California Supreme Court denied review. Defendant's challenge to the transfer order is not before this court on direct appeal.

Defendant relies on *People v. Wycoff* (2008) 164 Cal.App.4th 410, but that case is inapposite. The court in *Wycoff* held that when a matter is remanded for the trial court to conduct a proper *Pitchess* hearing, the defendant may appeal from the reinstated judgment for the limited purpose of challenging the *Pitchess* findings, although the defendant cannot relitigate issues that were or could have been decided in the first appeal. (*Id.* at p. 415.) Unlike the *Pitchess* context in *Wycoff*, here defendant could not challenge the transfer order by direct appeal. (Rule 5.770(g).)

It is true that when the California Supreme Court denied review of this court's summary denial of the writ petition on February 13, 2019, it indicated the denial was without prejudice to any relief under Senate Bill 1391 to which defendant might be entitled on direct appeal after Senate Bill 1391's effective date. (See *D.M. v. Superior Court* (2019) Cal. LEXIS 936, S253054.) As we have explained, however, defendant is not entitled to such relief on direct appeal.

Defendant's reliance on *People v. McKenzie* (2020) 9 Cal.5th 40 is also misplaced. In that case the trial court suspended imposition of sentence and placed the defendant on probation, and the defendant did not appeal from the order granting probation. Nevertheless, the California Supreme Court held that the defendant could seek the benefit of ameliorative statutory amendments during a later appeal from a judgment revoking

---

[4] Undesignated rules references are to the California Rules of Court.

probation and imposing sentence. (*Id.* at p. 43.) The Court held that for *Estrada* retroactivity purposes, there is no judgment without a sentence (*McKenzie,* at p. 46), and thus the defendant could seek the benefit of the change in the law that took effect while his appeal was pending. But *McKenzie* did not involve a conditional affirmance requiring reinstatement of a judgment without resentencing following a Proposition 57 transfer hearing, and cases are not authority for propositions not considered. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1134.) Moreover, unlike in *McKenzie*, in this case a criminal sentence was imposed and conditionally affirmed, review of that decision was denied, and the judgment was reinstated before Senate Bill 1391 took effect. *McKenzie* does not govern the instant case.

In addition, there is no indication that the Legislature intended Senate Bill 1391 to apply to a final judgment. "While we recognize that the Legislature may expressly avail defendants whose judgments are final of the benefits of newly enacted laws" (*People v. Chamizo* (2019) 32 Cal.App.5th 696, 700-701 [finding Senate Bill No. 180 did not apply retroactively to final judgments]), defendant points to nothing indicating that the Legislature intended such a result. (Compare Proposition 36 & Proposition 47; *People v. Rascon* (2017) 10 Cal.App.5th 388, 394-395 [Proposition 64 provides mechanism for resentencing or dismissing all judgments, including those that are final].)

Because the juvenile court's reinstatement of the final judgment did not affect defendant's substantial rights and is not appealable, the appeal must be dismissed. (§ 1237; *People v. Fuimaono* (2019) 32 Cal.App.5th 132, 135 [appeal from nonappealable postjudgment order must be dismissed; trial court lacked jurisdiction to grant defendant's sentencing request where conviction was final, and denial of motion could not have affected defendant's substantial rights and was therefore not appealable]; *People v. Chlad* (1992) 6 Cal.App.4th 1719, 1726 [dismissing appeal after ruling the trial court lacked jurisdiction to modify the restitution fines].)

DISPOSITION

The appeal is dismissed.

_____/S/_____
MAURO, J.

We concur:

_____/S/_____
BLEASE, Acting P. J.

_____/S/_____
HOCH, J.

10